CABOT
MANTANONA LLP
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913
Telephone:   (671)   646-2001
Facsimile:    (671)   646-0777

# FILED
DISTRICT COURT OF GUAM

SEP - 1 2006 *nbd*

MARY L.M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | | |
|---|---|---|
| Claudette McGhee, | ) | Civil Case No. 1:06-cv-00014 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT DELOS SANTOS'** |
| v. | ) | ***EX PARTE* MOTION TO QUASH** |
| | ) | **SERVICE OF PROCESS OR IN THE** |
| Herominando Delos Santos, et al. | ) | **ALTERNATIVE TO ENLARGE TIME** |
| | ) | **TO RESPOND TO COMPLAINT** |
| Defendants. | ) | |
| | ) | |

Pursuant to L.R. 7.1(j), Herominando Delos Santos (sic.) ("Dr. delos Santos") very respectfully requests an Order quashing service of process or in the alternative granting an extension of time, to September 26, 2006, in which to answer or otherwise respond to the Complaint herein. The bases for this motion are: (1) the purported summons herein was in many respects not in compliance with the Federal Rules of Civil Procedure ("F.R.Civ.Pro."); (2) the purported service of process herein on August 17, 2006, was not in compliance with the Federal Rules of Civil Procedure; and (3) if service of process is not quashed as requested, then Dr. delos Santos needs additional time to confer with Legal Counsel regarding facts and issues raised by the Complaint.

This motion is supported by the Memorandum of Points and Authorities which follows and the Certificate of Counsel filed contemporaneously herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

The plaintiff, Claudette McGhee ("Ms. McGhee") is *pro se*.

Dr. delos Santos is represented by Cabot Mantanona LLP.

As shown by Exhibits "B" and "B-2," attached and incorporated by reference, and detailed below, the purported summons herein was in many respects not in compliance with the Federal Rules of Civil Procedure. Specifically, the purported summons, without limitation:

    a.    was not signed by the clerk;

    b.    did not bear the seal of the court;

    c.    did not identify the court; and

    d.    did not state the name and address of the *pro se* plaintiff.

Dr. delos Santos very respectfully requests that this Honorable Court take judicial notice of the fact that the Docket Report herein shows that no summons has been issued by the Court.

As shown by Exhibits "A," "A-1," "B," "B-1," and "B-2," attached and incorporated by reference, and detailed below, the purported service of process herein was not in compliance with the Federal Rules of Civil Procedure because Ms. McGhee only mailed the complaint herein and the purported summons. The Federal Rules of Civil Procedure do not permit service of process by mailing a complaint and a purported summons.

Clearly, for the reasons set forth above, this Honorable Court should quash service of process herein. Because Dr. delos Santos has not been served as required by the Federal

-2-

Rules of Civil Procedure, his answer or other response to the complaint is not due.

Because the issues of defective service of process needed to be addressed as threshold, preliminary matters, Dr. delos Santos very respectfully requests that if this Honorable Court does not quash the service of process herein, then, in the alternative, Dr. delos Santos be granted until September 26, 2006 to answer or otherwise respond to the Complaint herein. Dr. delos Santos very respectfully submits that Ms. McGhee will suffer no prejudice by this extension because no summons has been issued by the Court herein, the pleadings herein have not closed, and, upon information and belief, Ms. McGhee will remain in California until December, 2006.

Counsel for Dr. delos Santos has attempted to contact Ms. McGhee without success. Therefore, undersigned counsel has not been able to determine whether Ms. McGhee opposes this request. For the reasons stated in the Certificate of Counsel filed contemporaneously herewith, Dr. delos Santos very respectfully requests that this Honorable Court waive any applicable notice requirement.

Respectfully submitted this 1st day of September, 2006.

CABOT MANTANONA LLP

By: _____
DAVID W. HOPKINS

DWH:km
GCC\EX PARTE MTN. TO QUASH SERVICE OF PROCESS

-3-

**CABOT**
**MANTANONA LLP**
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 646-0777

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| Claudette McGhee, | ) Civil Case No. 1:06-cv-00014 |
| Plaintiff, | ) |
| vs. | ) |
| Herominando Delos Santos, et al. | ) **DECLARATION OF FRANK MENO** |
| Defendants. | ) |

I, FRANK MENO, declare as follows:

1.      I am employed at Guam Community College ("GCC") as a messenger.

2.      On August 16, 2006:

        a.      I accepted delivery of an express mail envelope, a true and correct copy of which is attached as Exhibit "A-1" and incorporated by reference, at the U.S. Post Office in Barrigada, Guam.

        b.      I signed the return receipt that was attached to the above-referenced express mail envelope.

3.      On August 17, 2006, after sorting the mail that I received on August 16, 2006, I delivered the above-referenced express mail envelope to the secretary in the GCC President's Office, Ms. Anita Limtiaco.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 1st day of September, 2006.

_____
FRANK MENO

DWH:km
GCC\Declaration of Frank Meno

**EXHIBIT "A"**



EXHIBIT "A-1"

**CABOT**
**MANTANONA** LLP
BankPacific Building, Second Floor
825 South Marine Corps Drive
Tamuning, Guam 96913
Telephone:    (671)  646-2001
Facsimile:    (671)  646-0777

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

| | |
|---|---|
| Claudette McGhee, | Civil Case No. 1:06-cv-00014 |
| Plaintiff, | |
| vs. | |
| | **DECLARATION OF ANITA K. LIMTIACO** |
| Herominando Delos Santos, et al. | |
| Defendants. | |

I, ANITA K. LIMTIACO, declare as follows:

1.      I am employed at Guam Community College ("GCC") as a secretary in the GCC President's Office.

2.      On August 17, 2006:

      a.      I received from Mr. Frank Meno an express mail envelope, a true and correct copy of which is attached as Exhibit "B-1" and incorporated by reference.

      b.      I opened the above-referenced express mail envelope and examined its contents, complete, true and correct copies of which are attached as Exhibit "B-2" and incorporated by reference.

4.      Upon the instruction of the GCC President, I sent complete copies of the contents of the above-referenced express mail envelope to Cabot Mantanona LLP.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 1st day of September, 2006.

_____
ANITA K. LIMTIACO

DWH:km
GCC\Declaration of Anita K Limtiaco

**EXHIBIT "B"**



# FLAT RATE

## HOW TO USE:

**1. COMPLETE LABEL**

**2. PAYMENT METHOD**

**3. ATTACH LABEL**

**4. DROP OFF/PICK UP**

The efficient FLAT RATE ENVELOPE. You pay the Express Mail FLAT RATE postage. Some restrictions

**EXHIBIT "B-1"**

Recycled Paper

U.S. POSTAGE PAID
VAN NUYS, CA
91401
AUG 07 06
AMOUNT
$16.25
00067820-23

## EXPRESS MAIL
UNITED STATES POSTAL SERVICE

**Addressee Copy**
Label 11-B, March 2004

## Post Office To Addressee

### DELIVERY (POSTAL USE ONLY)

Delivery Attempt
Mo. Day ☐ AM ☐ PM
Employee Signature

Delivery Attempt
Mo. Day ☐ AM ☐ PM
Employee Signature

Delivery Date Time
Mo. Day ☐ AM ☐ PM
Employee Signature

### CUSTOMER USE ONLY

TO: (PLEASE PRINT)    PHONE ( )

ZIP + 4 U.S. ADDRESSEES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

### ORIGIN (POSTAL SERVICE USE ONLY)

PO ZIP Code | Day of Delivery | Postage
☐ Next ☐ 2nd ☐ 3rd Day | $

Date Accepted | Scheduled Date of Delivery | Return Receipt Fee
Mo. Day Year | Month Day | $

Time Accepted | Scheduled Time of Delivery | COD Fee | Insurance Fee
☐ AM ☐ PM | ☐ Noon ☐ 3 PM | $ | $

Flat Rate ☐ or Weight | Military | Total Postage & Fees
☐ 2nd Day ☐ 3rd Day | $

lbs. ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials

FROM: (PLEASE PRINT)    PHONE ( )

E 459 375 536 9 US

## FOR PICKUP OR TRACKING

Visit WWW.USPS.COM

Call 1-800-222-1811

PRESS HARD. YOU ARE MAKING 3 COPIES.

use may be a violation of federal law.

# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| Claudette McGhee, | Civil Case No. 1:06-cv-00014 |
| Plaintiff, | |
| vs. | **SCHEDULING NOTICE** |
| Herominando Delos Santos, et al., | |
| Defendants. | |

Claudette McGhee
6836 Colbath Avenue
Van Nuys, CA 91405

---

The Local Rules establish procedures for complying with Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure. Counsel should study the Local Rules before attempting to process cases in this Court.

Pursuant to Local Rules 16.1 and 16.2, it is hereby ORDERED that:

1. Counsel of record and all pro se litigants that have appeared in the case must meet and confer, within fifteen (15) days after receipt of this Notice, but no later than sixty (60) days after the filing of the complaint, prior to commencing discovery.

2. A proposed Scheduling Order and a proposed Discovery Plan shall be lodged on or before **08/07/2006**. Careful and immediate attention should be given to the directions in Local Rules 16.1 and 16.2 to ensure complete and timely compliance with Federal Rules 16(b) and 26(f), and the Local Rules.

3. Counsel for the plaintiff, or if the plaintiff is pro se, then the pro se plaintiff, must take the lead in the preparation of the Scheduling Order. If a defendant is not contacted by a pro se plaintiff within the required time frame, the defendant's counsel shall contact the pro se plaintiff and arrange a meeting to comply with this Rule in the appropriate time frame. The failure of a party or its counsel to participate in good faith in the framing of a Scheduling Order may result in the imposition of sanctions.

# EXHIBIT "B-2"

4. Counsel of record and all pro se litigants that have appeared in the case are jointly responsible for submitting a Proposed Discovery Plan to the Court.

5. A Scheduling Conference shall be held on **Tuesday, August 22, 2006 at 10:30 AM in the 3rd Floor Chambers**.

6. Counsel are reminded that:
    a) The filing of motions does not postpone discovery.
    b) Local Rule 37.1 governs discovery disputes and motions.
    c) The number and form of interrogatories are governed by Local Rule 33.1.
    d) Discovery documents and certificates of service shall not be filed with the Clerk until there is a proceeding in which the document or proof of service is in issue.

Dated:    July 17, 2006

                                      /s/ **Mary L.M. Moran**
                                      Clerk of Court

# UNITED STATES DISTRICT COURT

_____ District of _____

Claudette McJohn

V.

Guam Community College'
President Heronimus dela Santos
&                    defendant

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 06 - 0014

TO: (Name and address of Defendant)

Mr. Heronimus dela Santos, President, uspelet
Guam Community College
Mangilao, Campus

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

swer to the complaint which is served on you with this summons, within ____20____ days after service
s summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
e relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
of this Court within a reasonable period of time after service.

Claudette McJohn

June 27, 2006

DATE

PUTY CLERK

**Page 1 of 2**

**Attachment "I"**

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
Date                                            *Signature of Server*


_____
*Address of Server*

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Claudette McGhee, Pro Se
Post Office Box 3268
Hagatna, Guam 96932
Phone: (671) 477-9128
E-mail:



FILED
DISTRICT COURT OF GUAM

MAY 2 4 2006

MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM
### TERRITORY OF GUAM

| | | |
|---|---|---|
| Claudette McGhee, Plaintiff | ) | |
| | ) | **CIVIL CASE NO.** 06 - 0 0 0 1 4 |
| vs | ) | |
| | ) | **COMPLAINT** |
| Herominando Delos Santos, Defendant | ) | OF |
| John Rider , Defendant | ) | **DISCRIMINATION** |
| Gary Hartz, Defendant | ) | |

### JURISDICTION

This complaint is being brought pursuant to Title VII, the Americans with Disabilities Act, and under Title 29 U.S.C. Section 631 (a) as amended by the 1978 ADEA amendments; the Age Discrimination Employment Act of 1967, as amended in 1974 and all subsequent amendments; Title VII of the Civil Rights Act of 1964 and all subsequent amendments, and Title 42 U.S.C. Section 1981. **The jurisdiction of this court is invoked pursuant to Rule 8. (a) Federal Rules of Civil Procedure**

### COMPLAINT

Claudette McGhee, Plaintiff alleges that her termination on June 10, 2005 for incompetence and insufficiency was the results of a subjective appraisal that was racially motivated and discriminating in relation to my seniority on the job and age. The basis for this Complaint is disparate treatment, disparate impact, harassment, and retaliation for filing a EEO Discriminating Complaint..

Plaintiff opposes the termination was due to incompetence and inefficiency.. Herein, Plaintiff has provided a listing of how each task was accomplished and justification for tasks not accomplished. Defendants further stated, that Plaintiff 's work performance did not improve during the ninety (90) day evaluation period and Plaintiff did not successfully complete any of the assigned tasks satisfactory. Plaintiff again disagrees and contend that Guam Community College management staff would not have terminated any of its other employees, who are all non African Americans under same or similar circumstances, nor would they have been subjected to a ninety (90) day probationary period after receiving a satisfactory performance evaluation.

Page 1 of 8

Plaintiff has been the only African American employed for the College as a full-time permanent employee for more than ten years. This Complaint is timely submitted in compliance with the ninety (90) day NOTICE OF SUIT RIGHTS" which was transmitted from the U.S. Equal Employment Opportunity Commission on February 28, 2006.

## DEMAND

Plaintiff seeks re-instatement of sick leave; annual leave and back pay from the date of termination, punitive damages for defamation of character, undue mental stress that resulted in high blood pressure and aneurysm and to expunge my employment record of all adverse actions and/or negative reports.

## STATEMENT OF THE ISSUES

**There are three (3) issues before this Court:**

1.   The first issue is the denial of Due Process and Equal treatment.

2.   The second issue: Unsatisfactory Performance Evaluation – in violation of Guam Community College Personnel Rules and Regulations, Administrative Directive 95-001- policy-

3.   The Third issue: Retaliation and creating a hostile working environment

On October 21, 2001, Dr. Herominiano delos Santos, President convened a meeting for the purpose of asking me to retire from the College. If I accepted the offer he would offer me a one year contract to work for the college. After refusing to retire, at the conclusion of the meeting, the following day, on October 22, 2001, I was involuntary transferred from the Adult Education program and assigned the task of planning, developing, designing and establishing a Service Learning Center for the college. The Service Learning Center programs were developed and successfully implemented into the various programs throughout the college. The Service Learning Center is now renamed and called the Center for Civic Engagement under the administrative leadership of Elvie Tyler. During the following Spring semester of 2002, I was additionally tasked with the responsibility of developing an evaluation accountability procedure for the Student Council to use in the allocation of student

Case 1:06-cv-00014    Document 10    Filed 09/01/2006    Page 13 of 22

activities fees to the various college sponsored student organizations and to generate reports to account for the spending of these funds. On October 30, 2002, I was officially assigned as the Administrator for the Campus Life Programs under the supervision of the Student Service Administrator. The Campus Life Office was responsibilities for the administration and supervision of Student Organizations, Pacific Endowment Funds, Student Council, New Student Orientation, Welcoming Student Forum, Student Organization Elections, the budget and Leadership training.

January 2003, The Campus Life Programs were transferred to the newly created Office of Student Development under the administrative supervision of Mr. Gary Hartz, the Residence Life Administrator. This reorganization and developed new office was authorized by the academic Vice-President and the Technology and Student Services, Dean  The transfer of the Campus Life programs were replaced by the office of Student Development. The Campus Life Brochure was replaced with the Office of Student Development Brochure, all memo's used to transmit information used the letter heading addressed Office of Student Development. Therefore, the students, faculty and administrators responded to the Office of Student Development for all concerns and needs regarding student organizations, student activities and related concerns.

Plaintiff, claims the Defendants discriminated against her in denying equal treatment in the performance of her duties as an Administrator, such discriminatory behavior occurred in relation to the following memos:

1. Fraudulent Representation

2. Insubordination

3. Workshops & Conference planning committees

4. Performance evaluation memo submitted by Vice President

5. Timely approval of Funds to conduct conference/workshop

6. Job duties re-assigned by President

    a. Meet your President

    b. Ikeda, Ghandi & King – GCC Workshop

# STATEMENT OF THE COMPLAINT

This complaint arises from the Guam Community College management and the GCC Board of Trustee's affirming the dismissal decision of the college to terminate my employment without the College providing Plaintiff Due Process Equal Treatment and the opportunity to acquire legal counsel.

I, Plaintiff opposes the Unsatisfactory Performance Evaluation record on the grounds that the supervisor did not provide appropriate counsel, timely ratings, personal observed performance, nor provide examples of how a task should be completed to his satisfaction, when found that Plaintiff's performance was not meeting expectations. Additionally, the performance evaluation was subjective, and did not utilize a rating system to indicate the level of work need to acquire a satisfactory performance rating. The Performance evaluation failed in complying with the Guam Community College Personnel Rules and Regulations- Administrative Directive 95-001- Policy, which reads, "It shall be the policy of the Guam community College that all personnel... be evaluated on their job performance in accordance with the Guam Community College Personnel Rules and Regulations and the specifications of this Directive. Performance Evaluations shall be conducted and prepared for record keeping and are intended for:

- Use as the basic document in the granting of pay increments, determining order of layoffs and rating employee's suitability for promotion.
- Explore areas of possible need for improvement and growth of employee
- Identify employees feelings and attitudes, resulting as a feeling of harmony and cooperation between the employee and supervisor, strengthen identified weaknesses and build on known strengths.
- Uncover special abilities and potentials of the employee and allow for enhancement of his/or her skills to the mutual benefit of the employee and the college.
- Provide and improve the quality of services to the college and the community..

Page 4 of 11

The supervisor and the college use the Performance Evaluation to terminated my employment and did not provide for any of the stated purposes provided under the Administrative Directive Policy 95-001.

On June 10, 2005, the President of Guam Community College terminated my service with the college due to inefficiency, without providing me access to the Grievance Process. Mrs. Joan Muna, Human Resource Administrator, denied me the opportunity to utilize the Grievance procedure, by returning my grievance complaint and informing me that a Performance Evaluation could not utilize the Grievance Procedure and she then offered me the opportunity to address my complaint with the President. The President provided the hearing, after he had already approved my dismissal on a memo transmitting his approval signature on Mr.Gary Hartz's memo. Therefore, the meeting with the President was more or less to give the appearance of complying with the college procedure which had been overlooked..

Upon appealing to the Board of Trustees, I was informed by the Chairperson at the beginning of the Hearing, that I should have presented my appeal to the Board before being terminated, therefore, I should not expect the Board to overturn the President's decision. I informed the Board that I was not granted an opportunity to go through the Grievance Procedure, therefore, I was terminated without a hearing, while on sick leave. Joan Muna, the Human Resource administrator came to my home and delivered the termination notice, effective on that same day. As an employee for the College from December 1978 to June 2005, who had performed satisfactory work for an employment period that span over twenty seven (27) years, this behavior devastated me. Only once did I receive an unsatisfactory Performance Evaluation while employed for the college, it was the supervisor retracted an approved leave for me to go off-island for graduate study to obtain my doctorate degree. I was not aware of the disapproval until I returned to the Island.

Plaintiff's supervisor reported that the basis for the termination was that she had not performed any task satisfactory during the ninety- (90) day performance evaluation period. Yet, I provided a printed copy of each task performed and the President nor the Board of Trustees

entertained the report, read the report or allowed me to discuss the report in relation to how I performed each assigned task. Mr. Gary Hartz obtained signatures on his memo dated March 2005 to approve my dismissal from the college prior to providing me the opportunity to access the college Grievance procedures. Mr. Hartz obtained the signatures of Mr. Jamie Mason, Dean, Dr. John Rider, Vice President and Dr. Herminiano delos Santos, President . I was denied Due Process in addressing this Performance Evaluation through the Grievance Procedure by the Human Resource Administrator, Mrs. Joan Waki Muna, Administrator.

I, Plaintiff, was denied Due Process during my appealed to the GCC Board of Trustees in providing me sufficient time to obtain legal counsel. GCC provided their Attorney to represent Mr. Gary Hartz, and Mr. Hartz did not appear for the hearing. I was not permitted the opportunity to call any witnesses. I was permitted to respond at the conclusion of the GCC's Attorney's power point presentation to any of Mr. Hartz's memos. The Chairman requested that I make brief statements and the hearing was closed. The Board denied me equal treatment, due process and failed to address the issues in which the college management had violated.

I, Plaintiff, alleged that the College violated the College Personnel Rules and Regulations in the assignment of a contractual employee as supervisor and not providing the permanent employee the same opportunity who was more experienced and held the same educational qualification and job position adminstrative placement, as first level administrator at Guam Community College. I allege that I was not offered the promotional position because I am a senior African American and Mr. Hart is a younger White American. I, Plaintiff contend that the newly created Office of Student development replaced the Campus Life programs and the administrative duties were purposefully planned in an effort to remove me since I did not retire when offered.

However, the College gave Mr. Hartz authority to rewrite my duties and responsibilities. Mr. Hartz assumed the administrative responsibilities for the Campus Life programs under the Office of Student Development position which absorbed my duties or served as duplication of duties. Consequently, Mr. Hartz's performance evaluation report indicated that my work performance was

not at the level of an administrator, being mindful that my administrative duties were assigned to himself and the program coordinator, Mrs. Bobbie Leon Guerrero. I was striped of any decision making administrative duties and responsibilities. Those duties and responsibilities for the Program Specialist are included in the appendix section of this complaint. And the assigned Tasks for this Performance Evaluation Period

The college violated it's personnel rules and regulations section 10.001 –Employee Performance Evaluation, which states, "The President shall establish and maintain a performance evaluation system for the fair and objective appraisal of work performance of employees. Pursuant to Guam community college Personnel Rules and Regulations, section 10.007 (a) _Performance Evaluation Period, which states, "In accordance with the system and procedure prescribed by the President, supervisors shall evaluate the work performance for employees:

(a) every 12 months of service for permanent employees in Pay step1 through 6

every 18 months of service for permanent employees in Pay steps 7 through 9

every 24 months of service for permanent employees in Pay steps 10 and above

I , Plaintiff have completed twenty seven (27) years of service and has never served a probationary period after becoming a permanent employee during the total history of my working years . The ninety  (90) day Performance Evaluation failed to follow the procedures prescribed in the Administrative Directive 95-001- procedures, which states, "at the beginning of the rating period, the supervisor must ensure that the employee fully understand the specific duties and responsibilities of the position… the counseling shall include:

* Guidance /direction to improve through staff development programs by providing:
* Staff development programs
* Evaluating the effectiveness of training and making changes as may be necessary
* Provide feedback to enable employee to make performance modification

Supervisor transmitted a memo approximately a  week prior to the conduct of the evaluation period, which stated that I will conduct your Performance evaluation to determine if your work performed during the ninety (90) probationary period  is satisfactory or unsatisfactory.

Page 7 of 11

The Performance evaluation was unsatisfactory. My termination provided an opportunity for Mr. Hartz to obtain permanent employment with Guam Community College.

Mr. Gary Hartz was employed August, 2001 in the position of Resident Life Manager to provide administrative, supervision and guidance for students housed in the GCC dormitory. December 2001, the typhoon destroyed a large percent of the college buildings and GCC terminated offering dormitory stay for students. January 2002, The Student Services Dean in corporation with the Academic Vice President re-organized the Campus Life Office Programs in which I, Plaintiff, was serving as the Administrator. This re-organization consisted of transferring the Campus Life Programs to the newly develop Office of Student Development. The Campus Life programs was then known as Office of Student Development Programs under the administrative supervision of Mr. Gary Hartz.

. Gary Hartz was given the authority to re-organize the duties and responsibilities of the Campus life program activities and through this reorganization the Campus Life programs became the programs administred under the newly created Office of Student Development. Therefore, the Campus Life Programs did not exist as a separate program.

With this authority, Mr Hartz, administrative duties , the Campus Life budgets, and the student organizations were under his supervisions. This restructuring ushered in the complexities of problems, because there were duplications of duties, yet I was over-ruled by the authority the college had given to Mr. Hartz. Mr. Hartz transferred the administrative duties for leadership training, new student Orientation, President's Welcome Students Forum, student organizations files, students requests for funds and activities to the Program Coordinator.

Mr. Hartz, abused this authority, provided a bias subjective performance evaluation and purposefully created hostility among the staff and students by asking me to attend student organizational meetings, where I was not invited nor informed of their meeting schedules.

Mr. Hartz asked me to create new students organization and instructed me not to transmit a memo to the faculty and students to inform them of such need. Mr. Hartz instructed me to walk around on campus and recruit faculty Advisors and students interested in developing new student organizations.

On a different occasion, I was asked to go to revitalize the High School Organization, after scheduling the meeting dates with the faculty and students, I was then told, to cancel because , he nor the dean could not be present for the presentation and I was not permitted to conduct the meeting without one of them being present. Therefore, my duties as an administrator for the Campus Life programs did not exist under the Office of Student Development.

Pursuant to Guam community college Personnel Rules and Regulations, Section 344.01- Assignments, which reads, " In accordance with section 4411 GCA, regarding management rights and responsibilities, and consistent with duties of the Provost (President) enumerated under section 11971, Government Code of Guam, the Provost of the Guam Community College is charged with the following duties and responsibilities:

- To maintain efficient operation and direct GCC employees
- To hire, promote, transfer and assign employees to GCC positions

On October 21, 2001, I, the Plaintiff, was involuntarily transferred from the position of Program Specialist for the Adult Education program and assigned the task of developing a Service Learning component for infusion into the various college program curricula. The developed Service Learning instructional components were developed into a program during the second year of implementation. While being assigned as the Service Learning Program Specialist, another employee was employed as the Program Specialist for the Service Learning program, namely Sam Souza. Following her employment as a Program Specialist, Sam Souza was successful in obtaining a new position as Associate Dean.

A second employee, Elvie Tyler was then employed as the Service Learning Program Specialist. During the time that I, Plaintiff, was developing the Service Learning Program, the college received a three-year grant that provided for both on-island and off-island training. I, was provided the opportunity to attend the on-island training, but denied off-island training. All other GCC Program Specialists have been provided the opportunity to attend off-island training to improve their specific skills and keep current with new technologies and information in their program areas.

Page 9 of 11

These Program Specialists are: Joann Ige, Barbara Jacala Sam Souza, Wes Gima and Gary Hartz, as Office of Student Development Administrator and Bobbie Leon Guerrero, as the Office of Student Development Program Coordinator. She is now employed as the Program Specialist for the Campus Life Programs. The Office of student development is now operating with the Program Specialist as the administrator of the programs. I was denied any training off-island for the position in which I was transferred as the Service Learning Administrator and the Campus Life Programs Administrator

The Guam Community College management violated the GCC Personnel Rules and Regulations for Classified Employees, section 14.800 (2), which reads, " When an additional position is created, or when the new position is not a clear successor to the former position, career promotion is not authorized. The GCC Personnel Rules and Regulations, section 344.03 (a) (b) (c) (d) – Assignments, which reads, "Employee assignments shall be equitable and shall be guided by Seniority in the division. I have Seniority in the division and at the college – I was employed December 21, 1978 and Mr. Hart was employed August 2001 as a contract employee for a two year period. The college assigned Mr. Hartz as my supervisor, in violation to College Personnel Rules and Regulations. Mr. Hartz, contract was extended for one year, after his first attempt to terminate me was overruled. The Grievance Committee overruled his unsatisfactory performance Evaluation and the College then allowed Mr. Hartz to place me on a ninety (90) day probationary period, so that he would be given the opportunity again to terminate my employment. The President stated in his memo, that I would be terminated if I did not achieve satisfactory performance on the ninety- (90) day probationary evaluation. It is my contention, Plaintiff. that Mr. Gary Hartz was motivated to terminate my employment being that his employment with the college was terminating at the end of his extended contract and the college did not have an allotted budget for the newly created Office of Student Development administrator.

This Complaint will be based upon the documents transmitted herein, oral arguments and other papers and records as are on file or as may be presented at the hearing.

Dated this 24 day of May, 2006.

Respectfully submitted,

*Claudette McGhee*

Claudette McGhee
Pro Se